**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FURMANITE AMERICA, INC.,**

                **Plaintiff,**

**-vs.-**                        **Case No.:  6:06-cv-641-ORL-19JGG**

**T.D. WILLIAMSON, INC., GREG FOUSHI, JOSE DELGADO, SAUL FERRER, JAMES JACKSON, ROBERT JOLIN, MICHAEL MAINELLI, REBECCA MINERVINO, JAMES OVERSTREET, ROBERT SCHMIDT, and NICOLE TURNER,**

                **Defendants.**

_____

**ORDER**

This case comes before the Court on the following:

1.     Motion for Preliminary Injunction and Supporting Memorandum of Law, filed by Plaintiff Furmanite America, Inc. ("Furmanite") on June 6, 2006; (Doc. No. 13);

2.     Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, filed by Defendants T.D. Williamson, Inc., Greg Foushi, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, and Nicole Turner (collectively "Williamson") on August 4, 2006; (Doc. No. 38);

3.     Defendants' Notice of Filing Declarations of Saul Ferrer and Jose M.

-1-

Delgado in Support of their Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, filed by Williamson on August 7, 2006; (Doc. No. 40);

4. Defendants' Notice of Filing Declaration of Robert M. Schmidt in Support of their Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, filed by Williamson on August 9, 2006; (Doc. No. 41);

5. Plaintiff's Motion for Leave to File Reply to Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, filed by Furmanite on August 10, 2006; (Doc. No. 42);

6. [Proposed] Reply to Defendant's [sic] Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, filed by Furmanite on August 10, 2006; (Doc. No. 43);

7. Plaintiff's Notice of Filing Deposition Transcript of Robert Jolin, filed by Furmanite on August 10, 2006; (Doc. No. 44);

8. Plaintiff's Notice of Filing Deposition Transcripts of Michael Mainelli, James Jackson, filed by Furmanite on August 10, 2006; (Doc. No. 45-46);

9. Motion to Strike Plaintiff's Reply Memorandum and Supporting Declarations filed on August 10, 2006, and Memorandum in Opposition to Plaintiff's Motion for Leave to File Reply Memorandum, filed by Williamson on August 11, 2006; (Doc. No. 48); and

10. Plaintiff's Notice of Filing Deposition Transcripts of James Jackson, Matt Sisson, Stanley Pitts, Gregory Foushi, filed by Furmanite on August 11,

2006.  (Doc. Nos. 47, 49-51).

## Background

The instant case comes before the Court on the request of Plaintiff Furmanite America, Inc. ("Furmanite") for a preliminary injunction against Defendants T.D. Williamson, Inc., Greg Foushi, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, and Nicole Turner (collectively "Williamson").  For the reasons that follow, the Court finds that preliminary injunctive relief is not warranted in the case at bar.

Furmanite and T.D. Williamson, Inc. are direct competitors in the industrial pipeline repair industry.  In December of 2005, Furmanite purchased the assets of Flowserve Corporation ("Flowserve"), another pipeline repair company which had previously employed Greg Foushi, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, and Nicole Turner, the individual Defendants in the instant case.  (See Doc. No. 1-1, ¶ 20).  The assets purchased included, *inter alia*, computers, software, equipment and tools, trade secrets, and contractual and business relationships.  (*Id*.)  As a result of the asset purchase agreement, the individual Defendants all decided to become employed with Furmanite.

From December 2005 to January 2006, the individual Defendants each executed a confidentiality agreement with Furmanite.  (*See, e.g.,* Doc. No. 1-3).  Each agreement prohibited the signing employee from disclosing confidential information or confidential work product to any other party without prior written consent of Furmanite.  (*See id*.).  However, the agreement exempted from the definition of "confidential" the following:

information or confidential work product information in the public domain, information rightfully in the employee's possession prior to the agreement, information lawfully provided to the employee by a third party, and information developed independently by the employee without reference to confidential information. (*See id.*). Finally, the agreement provided that any confidential items provided to the employee by Furmanite are provided solely for the benefit of Furmanite and must be returned upon request. (*See id.*).

It is undisputed that the individual Defendants did not sign a covenant not to compete.

On March 31, 2006, the individual Defendants all resigned from their respective positions with Furmanite without advance notice. (*See* Doc. No. 13, p. 2; Doc. No. 38, ¶ 1). On April 3, 2006, the individual Defendants began employment with the corporate Defendant, T.D. Williamson, Inc.   (*See* Doc. No. 13, p. 2; Doc. No. 38, ¶ 1).  In its Complaint, Furmanite alleges that the Defendants, acting in concert, devised an illegal scheme to "paralyze" Furmanite by deleting computer data and removing all copies of various paperwork, books, forms, customer information, and a computer disk. (Doc. No. 1-1, pp. 4-5; Doc. No. 13, p. 2).  In addition, Furmanite alleges that the Defendants made knowing misrepresentations to Furmanite's customers in an effort to convince them to give their business to T.D. Williamson instead of Furmanite. (*See* Doc. No. 1-1, pp. 5-6). Furmanite alleges that the actions of the Defendants amount to tortious interference with a business relationship, trade slander, misappropriation of trade secrets, breach of confidentiality agreements, conversion, and a violation of the Florida Unfair and Deceptive Trade Practices Act. (*See generally* Doc. No. 1-1).

-4-

Furmanite seeks a preliminary injunction enjoining Williamson from a) further using Furmanite's alleged trade secrets; b) tortiously interfering with Furmanite's business relationships and customers; c) slandering Furmanite in its business practices; and d) further breaching the confidentiality agreement.  (*See* Doc. No. 13, p. 12).  Furmanite further requests that the Court order Williamson to return to Furmanite all property removed from the premises by the individual Defendants.  (*Id.*)  In response, Williamson denies that any confidential information or trade secrets were taken by the individual Defendants. Defendants further argue that Furmanite has not met its burden of proving a substantial likelihood of success on the merits of its claims.

### Standard of Review

Generally, the purpose of a preliminary injunction is to maintain the status quo until the district court can enter a final decision on the merits of the case.  *United States v. DBB, Inc.*, 180 F.3d 1277 (11th Cir.1999).  To prevail on its request for injunctive relief, the party seeking the injunction must demonstrate the following:  (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is not issued; (3) that the threatened injury to the party seeking the injunction outweighs the potential damage that the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, will not be adverse to the public interest.  *E.g., Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).  Because a preliminary injunction is an extraordinary and drastic remedy, such relief is not to be granted unless the movant clearly establishes the 'burden of persuasion' as to each of the four prerequisites.  *See, e.g., McDonalds,* 147 F.3d at 1306; *Schiavo*, 403

F.3d at 1231.

A party may support its motion for a preliminary injunction by setting forth allegations of specific facts in affidavits. *See* M.D. Fla. R. 4.05(b)(2), 4.06(b)(3). In considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent injunction. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir.1995); *F.A.C.E. Trading, Inc. v. Famiano*, Case No. 8:05-cv-1740T23TBM, 2006 WL 571723, at *7 n. 6 (M.D. Fla. March 8, 2006).

## Analysis

### 1.  Motion for Leave to File a Reply Brief

Furmanite moves the Court for permission to file a reply to Williamson's memorandum in opposition to preliminary injunctive relief. (Doc. No. 42). The Court will deny Plaintiff's motion for leave to file a reply brief.

Furmanite's motion suffers from various fatal procedural defects. First, Furmanite's motion was not timely filed. Local Rule 4.06(2) requires all memoranda and evidence which a party seeks to introduce in support of prosecuting or defending against a motion for preliminary injunctive relief to be filed no later than five (5) days before the date set for a hearing on the motion for a preliminary injunction. (*See* Local Rule 4.06(2)). Furmanite's motion was filed on August 10, only two (2) business days before the hearing. (*See* Doc. No. 42). Furthermore, the filing violates Local Rule 3.01(d), which prohibits the movant from submitting the proposed reply before the Court considers the motion for leave to file. (*See* Local Rule 3.01(d)). In addition, the motion for leave to file does not contain the

requisite 3.01(g) certification.  (*See* Local Rule 3.01(g)).  Finally, the proposed reply brief purports to rely on evidence and exhibits filed contemporaneously with the motion for leave to file a reply.  (*See* Doc. Nos. 44-47; 49-51).  Local Rules 4.05(b)(2) and 4.06 require that Furmanite support its motion for preliminary injunction with a verified complaint, declarations, and/or affidavits.  (*See* Local Rules 4.05(b)(2); 4.06).  Furmanite's proposed reply seeks to rely upon untimely declarations and evidence that did not accompany its complaint or motion for a preliminary injunction as well as the verified complaint which is timely.  (*See generally* Doc. No. 43).  For these reasons, the Court will deny Furmanite's motion for leave to file a reply and strike the documents submitted with such motion.

## 2.  Motion for Preliminary Injunction

### A.  Likelihood of Success on the Merits

The first and primary factor in determining whether a preliminary injunction should issue is whether the plaintiff is likely to prevail on the merits of its claims.  *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1026 (11th Cir. 1989); *Glen Raven Mills, Inc. v. Ramada Int'l, Inc.*, 852 F. Supp. 1544, 1547 (M.D. Fla. 1994).  "It is clear from our cases that proof of a substantial likelihood of success on the merits is an indispensable prerequisite to a preliminary injunction."  *All Care Nursing Serv. v. Bethesda Mem. Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989).  To demonstrate a substantial likelihood of success on the merits, the plaintiff must make a showing of likely or probable, but not certain, success at trial.  *Schiavo*, 403 F.3d at 1232 (citing *Home Oil Co., Inc. v. Sam's East, Inc.*, 199 F.Supp.2d 1236, 1249 (M.D. Ala. 2002)).

Without expressing an opinion as to whether Furmanite will ultimately prevail, the

Court finds that Furmanite has not presently demonstrated the "indispensable prerequisite" of likely success on the merits of its claims. Upon an examination of the record, the Court finds that numerous issues of fact remain regarding the conduct of the individual Defendants, Furmanite's ownership interest in the allegedly removed materials, and whether any of the information taken by the individual Defendants was confidential or constituted a trade secret. Thus, because many issues of fact remain, the Court declines to grant the extraordinary remedy of preliminary injunctive relief and to disturb the status quo prior to trial. *See, e.g., McDonalds,* 147 F.3d at 1306.

First, issues of fact remain regarding the conduct of the individual Defendants. Furmanite claims that Williamson is liable for tortious interference and trade slander for allegedly misrepresenting Furmanite's financial condition and disparaging its workmanship to third parties Kloote Construction Company and Poole & Kent Company in an effort to bring more business to T.D. Williamson. Furmanite contends that these comments were untrue and intentionally designed to interfere with its business relationships. In order to establish a *prima facie* case for both tortious interference and trade slander, Furmanite must prove that such statements were made by a Defendant. *See, e.g., Gossard v. Adia Serv., Inc.*, 723 So. 2d 182, 184 (Fla. 1988) (demonstrating "intentional and unjustified interference" required for tortious interference claim); *Lehman v. Goldin*, 36 So. 2d 259, 260 (Fla. 1948) (demonstrating publication of an untrue and disparaging statement required for trade slander claim). In the instant case, however, all Defendants deny making such disparaging comments. (*See, e.g.,* Doc. Nos. 38-2 to 38-4). In addition, David Kloote, the President of Kloote Construction Company, denies that such conversation ever took place. (*See* Doc. No.

38-5, ¶¶ 3-4).

With regard to Furmanite's tortious interference, trade secret, and breach of confidentiality agreements claims, issues of fact remain as to what, if any, trade secret or confidential information was taken by Williamson.  Williamson concedes that a quote log book was mistakenly taken from Furmanite's offices but that this item was returned to Furmanite's counsel as soon as it was discovered without copying the information therein. (*See, e.g.,* Doc. No. 38-2, ¶ 5).  Further, Greg Foushi stated that none of the information in the quote book was provided by Furmanite.  (*See id.*).  The individual Defendants all deny taking any of Furmanite's contract files, active quote files, files relating to ongoing projects, open invoices, accounts receivable files, project or job files, customer files, personnel files, equipment, or appliances.  (*See, e.g.,* Doc. Nos. 38-2 to 38-4).  Furmanite has produced no evidence at this stage in the litigation for the Court to conclude otherwise.

Williamson has conceded that other than the personal effects of the individual Defendants, two other items were removed from Furmanite's office on March 31.  First, Greg Foushi states that he saved onto a disk and took with him all of the Microsoft Word and WordPerfect documents and Excel spreadsheets he had compiled during his tenure at Furmanite and deleted them from his computer's hard drive.  (*See* Doc. No. 38-2, ¶ 5). However, Foushi testified that the spreadsheet was his own personal estimation of costs which did not contain any data belonging to Furmanite.  (*See id.* at ¶ 4).  He further stated that he left hard copies of any of the documents he took which pertained to Furmanite's past or ongoing business ventures in Furmanite's customer files.  (*See id.* at ¶ 5).  During oral arguments, and in their evidentiary submissions, the parties were unable to more accurately

-9-

identify the nature of the documents taken by Foushi.  With such a crucial issue of fact left unresolved, the Court cannot conclude at this time that the taking of the documents and spreadsheets constituted tortious interference, misappropriation of trade secrets, or a breach of the confidentiality agreements.

Secondly, Greg Foushi and Michael Mainelli admit to taking a copy of the "ACT database." (*See, e.g., id.* at ¶ 4).  The ACT database is a computerized compilation of the names, phone numbers, and addresses of customers and business contacts developed over fifteen (15) years by Greg Foushi and Michael Mainelli.  (*See, e.g., id.*).  The program was purchased by Greg Foushi and Michael Mainelli.  (*See, e.g.,* Doc. No. 38-10, pp. 119-121). Greg Foushi and Michael Mainelli used their own funds to update the software.  (*See id.*). According to Greg Foushi, most of the names in the database are public record, and Furmanite did not provide the individuals with any of the names in the database.  (*See*, *e.g*., Doc. No. 38-2, ¶ 4).  There is no evidence that either of Foushi's former employers, Flowserve and its predecessor IPSCO, made any effort to claim ownership of the database.

The Court concludes that Furmanite has demonstrated a substantial likelihood of proving at trial that these items were taken by the individual Defendants. However, Furmanite has not demonstrated a substantial likelihood that it will prevail on its claims that such actions by the individual Defendants were wrongful.  First, an issue of fact exists as to the ownership of the ACT database, as Furmanite has not produced any evidence that it asserted ownership over the database or that it gave its employees notice that it considered the database to be either a trade secret or covered by the confidentiality agreement.  If Furmanite cannot establish ownership or control, then its claims fail, as the confidentiality

agreement expressly exempted from the definition of confidential material information rightfully in the employee's possession prior to the agreement and information developed independently by the employee without reference to confidential information. (*See* Doc. No. 1-3).

Secondly, an issue of fact exists as to whether the ACT database contained any protected information.  If the ACT database contained only publicly available information, Furmanite's claims would likely fail, as the confidentiality agreement also exempts from the definition of "confidential" information or confidential work product information in the public domain and information lawfully provided to the employee by a third party.  (*See* Doc. No. 1-3).  In the instant case, Furmanite bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy.  *See, e.g., Lee v. Cercoa, Inc*., 433 So.2d 1, 2 (Fla. 4th DCA1983). Furthermore, information that is generally known or readily accessible to third parties cannot qualify for trade secret protection under Florida law.  *See American Red Cross v. Palm Beach Blood Bank, Inc*., 143 F.3d 1407, 1410 (11th Cir. 1998) (citing *Bestechnologies, Inc. v. Trident Envtl. Sys., Inc*., 681 So.2d 1175, 1176 (Fla. 2d DCA 1996)).  An employer may not preclude its former employee from utilizing contacts gained during his former employment.  *See id.; Templeton v. Creative Loafing Tampa, Inc*., 552 So.2d 288, 290 (Fla. 2d DCA 1989).

After reviewing the incomplete record in the case at bar, the Court cannot conclude that Furmanite is substantially likely to establish that the ACT database is a trade secret or that it contained any protected, confidential information.  With the evidence at best in

equipoise and numerous issues of fact remaining, Furmanite has not met its burden of demonstrating a substantial likelihood of success on the merits of its claims.  *R. Miller Architecture, Inc. v. Edgington Enterprises, Inc.,* No. 6:06-cv-871-Orl-19DAB, 2006 WL 2226297, at \*4 (M.D. Fla. August 3, 2006); *Moore v. Summers*, 113 F.Supp.2d 5, 24 (D. D.C. 2000).

### C.  Irreparable Harm

The Eleventh Circuit has stated that irreparable harm or injury is " 'the *sine qua non* of injunctive relief.' " *See, e.g., Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990)).  Without a finding of a likelihood of irreparable injury, preliminary injunctive relief is improper and will be reversed on appeal.  *See id.*  In order to qualify as irreparable, harm or injury must be "actual and imminent." *Id*. In determining whether harm is irreparable, courts consider, *inter alia*, the nature of the harm alleged and the delay of the movant in seeking relief.  *See, e.g.*, *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc*., 60 F.3d 27, 39 (2d Cir.1995); *Pippin v. Playboy Entertainment Group, Inc.*, Case No. 8:02-cv-2329T30EAJ, 2003 WL 21981990, at \*2 (M.D. Fla. 2003).

In the instant case, Furmanite argues that irreparable harm should be presumed due to the nature of its claims against Williamson.  Furmanite further argues that the Court should find irreparable injury because it has established a *prima facie* case on its claims. However, irreparable harm will not be presumed where the party seeking the injunction cannot demonstrate a likelihood success on the merits.  *See, e.g., Block State Testing Serv.,*

*L.P. v. Kontractor's Prep Corp.*, 4 F.Supp.2d 1365, 1367 (M.D. Fla. 1997).

Thus, as Furmanite has failed to demonstrate both a likelihood of success on the merits and that it will suffer irreparable harm if the injunction is not issued, the Court will deny Furmanite's  motion for preliminary injunctive relief.[1]

## Conclusion

Based on the foregoing:

1.      The Plaintiff's Motion for Leave to File Reply to Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, filed by Furmanite on August 10, 2006, (Doc. No. 42), is **DENIED**;

      a.      As a result, Docket Entries 43 through 47 and 49 through 51 shall be **STRICKEN** from the record in the instant case as untimely filed; and

      b.      The Motion to Strike Plaintiff's Reply Memorandum and Supporting Declarations filed on August 10, 2006, and Memorandum in Opposition to Plaintiff's Motion for Leave to File Reply Memorandum, filed by Williamson on August 11, 2006, (Doc. No. 48), is **DENIED as moot**.

2.      The Motion for Preliminary Injunction and Supporting Memorandum of Law, filed by Furmanite on June 6, 2006, (Doc. No. 13), is **DENIED**.

---

[1]      Because Furmanite has failed to satisfy the two prerequisites of the standard for granting an injunction, namely, irreparable injury and likelihood of success on the merits, the Court will not analyze its supplemental argument that an injunction meets the standard for the balance of hardship to other interested persons, or the argument that an injunction would be in the public interest.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this 17th__ day of August, 2006.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

Clerk of Court