**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FURMANITE AMERICA, INC.,**

**Plaintiff,**

**-vs.-** **Case No.: 6:06-cv-641-Orl-19JGG**

**T.D. WILLIAMSON, INC., TDW SERVICES, INC.,GREG FOUSHI, JOSE DELGADO, SAUL FERRER, JAMES JACKSON, ROBERT JOLIN, MICHAEL MAINELLI, REBECCA MINERVINO, JAMES OVERSTREET, ROBERT SCHMIDT, NICOLE TURNER, JOHN FOUSHI and BRYAN McDONALD,**

**Defendants.**

---

**ORDER**

This case comes before the Court on the following:

1. Order [denying Motion for Leave to Amend Complaint], entered by United States Magistrate Judge James G. Glazebrook on January 29, 2007. (Doc. No. 118);

2. Plaintiff's Objections to Magistrate's Order Denying Plaintiff's Motion for Leave to Add Prayers for Punitive Damages, filed by Plaintiff Furmanite America, Inc. ("Furmanite") on February 9, 2007; (Doc. No. 128); and

3. Defendants' Response to Plaintiff's Objections to Magistrate's Order Denying Plaintiff's Motion for Leave to Add Prayers for Punitive Damages, filed by Defendants T.D. Williamson, Inc., TDW Services, Inc.,Greg Foushi, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, Nicole Turner, John Foushi and Bryan McDonald (collectively "TDW") on February 19, 2007. (Doc. No. 130).

**Background**

The instant case comes before the Court on the objection of Plaintiff Furmanite America, Inc. ("Furmanite") to the United States Magistrate Judge's Order denying Furmanite leave to amend its Complaint to assert a claim for punitive damages. Defendants T.D. Williamson, Inc., TDW Services, Inc., Greg Foushi, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, Nicole Turner, John Foushi and Bryan McDonald, (collectively "TDW"), oppose Plaintiff's objection. For the reasons that follow, the Court finds that the Magistrate Judge did not err in denying Furmanite leave to amend its Complaint to add prayers for punitive damages.

Furmanite and T.D. Williamson, Inc. are both firms which operate in the industrial pipeline repair industry. Prior to December of 2005, Furmanite employed Defendants Greg Foushi, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, Nicole Turner, John

Foushi as employees in its Orlando, Florida service center. (*E.g.*, Doc. No. 61, ¶ 24). On March 31, 2006, Greg Foushi, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, and Nicole Turner all resigned from their employment with Furmanite, allegedly without providing any advance notice of their resignations and leaving Furmanite's Orlando office without staffing.[1] (*Id*. at ¶ 31).

The crux of the instant case is an alleged conspiracy on the part of the corporate and individual defendants to cripple Furmanite's Orlando office by having the former employees simultaneously resign on March 31, 2006 while also removing Furmanite's property and engaging in trade slander. (*See generally* Doc. No. 61). TDW denies the above allegations, and Defendants Greg Foushi and Michael Mainelli counterclaim for breach of contract and unpaid commissions. (*See generally* Doc. Nos. 65, 66). As the matter presently before the Court deals with the legal issue of allowing leave to amend the pleadings, the Court will omit discussion of the remaining factual allegations of the Amended Complaint and the counterclaims.

Furmanite filed its first Complaint in the instant case on May 12, 2006. (Doc. No. 1). On June 6, 2006, Furmanite moved the Court for preliminary injunctive relief.[2] (Doc. No. 13). Furmanite's motion was denied by the Court on August 17,

---

[1] John Foushi had previously resigned on March 17, 2006. (*E.g.*, Doc. No. 61, ¶ 28).

[2] Furmanite sought a preliminary injunction enjoining TDW from a) further using Furmanite's alleged trade secrets; b) tortiously interfering with Furmanite's

2006. (Doc. No. 53). On August 7, 2006, the Court entered a Case Management and Scheduling Order stating that the deadline to amend all pleadings would be September 22, 2006. (Doc. No. 39). On October 4, 2006, Furmanite filed its First Amended Complaint in the case at bar, which added claims against additional Defendants.[3] (Doc. No. 61).

On November 17, 2006, Furmanite moved the Court for leave to amend its Complaint to assert prayers for punitive damages. (Doc. No. 76). On January 29, 2007, the Magistrate Judge held a hearing in the instant case, and Furmanite's Motion was denied. (Doc. No. 118). After hearing argument by the parties, the Magistrate Judge found that Furmanite's request was untimely, as the deadline for amending the pleadings had passed. (Doc. No. 128-3, p. 48). The Magistrate Judge further ruled that Furmanite had failed to demonstrate compelling reasons for its untimely Motion. (Doc. No. 128-3, pp. 48-49). Thus, the Magistrate Judge denied Furmanite's request.

Furmanite argues several points in its Objection to the Magistrate Judge's Order. First, Furmanite argues the Magistrate Judge applied the incorrect standard in ruling on the motion for leave to amend. (Doc. No. 128, p. 6). Secondly, Furmanite argues that the fact it has recently discovered new evidence, coupled with the public

---

business relationships and customers; c) slandering Furmanite in its business practices; and d) further breaching the confidentiality agreements allegedly signed by the former employees. (*See* Doc. No. 13, p. 12).

[3] Defendants did not oppose Furmanite's request to amend its pleadings. (Doc. No. 58, filed on October 2, 2006).

policy favoring amendment of pleadings demonstrates ample cause to allow amendment of the Complaint. (*Id*. at pp. 7-9). Finally, Furmanite provides a "timeline" of relevant discovery events and TDW's alleged discovery abuses in the instant case. (*Id*. at pp. 9-23).

In response, TDW argues that any purported new evidence discovered by Furmanite is being used in support of its existing claims, and the existence of this evidence does not excuse Furmanite's failure to plead punitive damages when it first asserted those claims. (Doc. No. 130, p. 2). TDW further argues that any delay in the disclosure of such new evidence was caused by Furmanite and not TDW. (*Id*.) Finally, TDW argues that the Magistrate Judge did not err in using the standard he applied in reviewing the motion for leave to amend. (*Id*. at pp. 7-8).

**Standard of Review**

Contrary to Furmanite's contention, Furmanite's motion for leave to amend was a pre-trial motion that falls within the United States Magistrate Judge's jurisdiction under 28 United States Code Section 636(b) and Local Rule 6.01(18). Motions to amend pleadings are non-dispositive matters which may be referred to a magistrate judge and reviewed by the district court under the "clearly erroneous standard." *E.g. Agan v. Katzman & Korr, P.A.*, 328 F.Supp.2d 1363, 1365 n.1 (S.D. Fla. 2004) (citing *Wingerter v. Chester Quarry Co.*, 185 F.3d 657 (7th Cir. 1999); *Professional Food Equipment, Ltd. v. Hobart Corp.*, No. 97-1449-Civ-J-20A, 1999 WL 1044231, at *2 (M.D. Fla. Mar. 19, 1999); *Pagano v. Frank*, 983 F.2d 343, 346

(1st Cir. 1993); *Stetz v. ReeherEnters, Inc*., 70 F.Supp.2d 119, 120 (N.D. N.Y. 1999). Thus, the Court will reverse the ruling of the Magistrate Judge only if "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A).

Under the clearly erroneous standard, any portion of the Magistrate Judge's Order found to be clearly erroneous or contrary to law may be set aside or modified by the district court. *E.g. Linea Navira De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A*., 169 F.Supp.2d 1341, 1355 (M.D. Fla. 2001). A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Pullman-Standard v. Swint*, 456 U.S. 273, 285 n. 14 (1982), *citing United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

Finally, the Court notes that motions to extend the deadlines in the Court's scheduling Order are generally disfavored. (*E.g.*, Doc. No. 39, p. 5).

**Analysis**

**A. The Applicable Standard**

Furmanite is correct in its contention that the applicable standard in the Eleventh Circuit is that it must show "good cause" to modify the case's scheduling order to permit the untimely amendment of pleadings. Fed. R. Civ. P. 16(b); *Sosa v. Airprint Systems, Inc*., 133 F.3d 1417, 1418 (11th Cir. 1998) (per curiam). However, Furmanite's argument that the Magistrate Judge failed to apply this standard is not well taken. In explaining the applicable standard of review as part of his ruling, the

Magistrate Judge stated, "The law that is applicable is as follows, when a motion to amend is made afer the deadline established by the court's pretrial scheduling order, *good cause* must be shown to modify the scheduling order to permit the amendment." (Doc. No. 128-3, p. 48). While it is true, as Furmanite contends, that the Magistrate Judge also stated that Furmanite must show "compelling reasons" why the amendment could not have been presented earlier,[4] the Court agrees with TDW that this language was not intended by the Magistrate Judge to impose a heightened standard. It was merely language from an older opinion which simply articulates the good cause standard in different verbiage.[5] Thus, in finding that Furmanite failed to demonstrate compelling reasons for untimely amendment of its Complaint,[6] the Magistrate Judge was simply stating that Furmanite failed to establish valid reasons demonstrating that good cause exists to permit such amendment. For these reasons,

---

[4] Doc. No. 128-3, p. 49.

[5] While it is true that another of the cases cited by the Magistrate Judge, *Nevels v. Ford Motor Co.*, 439 F.2d 251, 257 (5th Cir. 1971), stated the "compelling reasons" language outlined above, it is clear from *Nevels* and its progeny that showing "compelling reasons" for the amendment of pleadings is a means of attaining the good cause standard. *See id*. (stating that "amendments should be tendered no later than the time of pretrial, unless *compelling reasons* why this could not have been done are presented. In these times of log-jammed trial dockets, a trial judge must exercise sound discretion in deciding motions for leave to amend. His decision must weigh *good cause* shown for the delay in moving, *vis a vis* dilatoriness of counsel resulting in last minute surprise and inability of opposing counsel to meet the tendered issue.") (emphasis added); *see also Bates v. Cook, Inc.*, 615 F.Supp. 662, 670 (M.D. Fla. 1984) (stating that the above language in *Nevels* merely "explicated" the standard set out by the Supreme Court for amendment of pleadings).

[6] Doc. No. 128-3, p. 52.

the Court finds that the Magistrate Judge did not apply the incorrect legal standard in considering the motion for leave to amend.

**B. Failure to Show Good Cause**

The Magistrate Judge's finding that Furmanite failed to show good cause to amend its pleading to assert prayers for punitive damages was not clearly erroneous or contrary to law. Furmanite advances two arguments in support of its contention that it has shown good cause to permit amendment of the pleadings. First, Furmanite argues that it has recently discovered new evidence which only now gives it a proper basis for asserting prayers for punitive damages. The Magistrate Judge correctly rejected this argument as insufficient. As the Magistrate Judge pointed out, Furmanite is attempting to use newly discovered evidence in support of its existing claims, some of which allege intentional tortious conduct on the part of Defendants. Thus, this new evidence does not excuse Furmanite's failure to plead punitive damages when it first asserted those claims or again asserted such claims in its First Amended Complaint. Furthermore, the Magistrate Judge did not rule contrary to law when he found that none of the allegedly new evidence is of such "blockbuster" quality as to provide a valid reason why the amendment could not have been presented earlier.

Furmanite's argument that it lacked sufficient evidence to support adding a prayer for punitive damages within the time frame outlined in the Court's Case

Management and Scheduling Order[7] is disingenuous. Federal pleading rules, unlike those adopted by the state of Florida, allow plaintiffs to plead punitive damages in the initial complaint, before taking any discovery. *See Cohen v. Office Depot*, 184 F.3d 1292, 1295-99 (11th Cir. 1999) (vacated on other grounds, 204 F.3d 1069 (11th Cir. 2000); *Rolle v. Brevard County*, No. 6:06-cv-714-Orl-19JGG, 2007 WL 328682, at *13 (M.D. Fla. Jan. 31, 2007). Under Florida law, punitive damages are generally available for intentional torts. *E.g., Morton v. Polivchak*, 931 So. 2d 935, 940 (Fla. 2d DCA 2006).

Furmanite's first argument fails because the evidence in the record and presented at the hearing demonstrates that the "sufficient evidentiary basis" Furmanite possessed to allege the numerous intentional torts it pled in its initial and Amended Complaint also provided a sufficient evidentiary basis to assert a claim for punitive damages in a timely manner. As early as June of 2006, with the filing of Plaintiff's Motion for Preliminary Injunction, it apparently possessed a sufficient evidentiary basis to argue that Defendants engaged in intentional torts, in concert with each other, which served to "pillage" Furmanite's Orlando office. (Doc. No. 13, p. 7, filed on June 6, 2006). Furmanite's Amended Complaint, filed on October 4, 2006, alleges that Defendants are liable for the intentional torts of tortious interference with business relationships, trade slander, misappropriation of trade secrets, conversion,

---

[7]   Doc. No. 39, filed on August 7, 2006.

conspiracy/economic boycott, and conspiracy to tortiously interfere with business relations. (*See generally* Doc. No. 61). Possessing sufficient evidence to assert these Counts of the Amended Complaint based on the factual allegations that the former employees, *inter alia*, made knowing misrepresentations to Furmanite's customers about its solvency and stole files, equipment, data, programs, appliances, and trade secrets,[8] would clearly support including a prayer for punitive damages at that time. "The intentional infliction of harm, or a recklessness which is the result of an intentional act, authorize punishment which may deter future harm to the public by the particular party involved and by others acting similarly." *Gordon v. State*, 585 So. 2d 1033, 1036 (Fla. 3d DCA 1991) (affirmed, 608 So. 2d 900 (Fla. 1992)) (quoting *Ingram v. Pettit*, 340 So.2d 922, 924 (Fla. 1976)).

Furmanite admits that it possessed "some" evidence supporting a claim for punitive damages before the deadline for amending pleadings had passed, but claims it was not enough to amend the Complaint in a timely manner. (*E.g.*, Doc. No. 128, p. 7). Based on the evidence presented by the parties, the Magistrate Judge committed no error in rejecting this argument.

Secondly, Furmanite argues that misrepresentations by several of TDW's witnesses during depositions and TDW's delay in withholding documents provides good cause for the Court to allow amendment of the Complaint after the deadline.

---

8 *E.g.*, Doc. No. 130 at ¶¶ 32, 34, 36-37.

This argument is not well taken, and the Court finds the Magistrate Judge did not act contrary to law in rejecting it.

First, Furmanite contends that the former employees' actions in allegedly deleting company emails and computer files from Furmanite computers contributed to Furmanite's delay. However, the evidence presented demonstrates that this is likely not the case. Furmanite's computer forensic specialist, Eric Lakes, testified that he was not able to identify which, if any, files were deliberately manually deleted by the former employees. (Doc. No. 130-2, p. 11). According to Furmanite, Mr. Lakes was unable to retrieve and view the emails in question until November of 2006. However, Furmanite's suggestion that this was due to Defendants' actions is disingenuous. As TDW points out, the evidence demonstrates that Mr. Lakes spent almost 28 hours in April of 2006 harvesting and analyzing data taken from the computers, then did not work on the case again for three months. Lakes worked for only ten (10) hours in July and August and did no additional work until November. Thus, Lakes spent a total of approximately 38 hours working on data retrieval in the instant case prior to the September 22, 2006 deadline for amending pleadings. (See Doc. No. 130-2, pp. 12-13). This belies Furmanite's contention that it needed "hundreds of hours" to find the relevant material due to the Defendants' actions. (Doc. No. 128, p. 9).

Secondly, Furmanite cites TDW's failure to produce various documents as contributing to the delay in the instant case. However, the record demonstrates that

these documents were not produced because TDW timely objected to the production of such documents, and they became part of a discovery dispute between the parties. (*E.g.*, Doc. No. 128, pp. 11-12; Doc. No. 130, pp. 11-12). Thus, this argument is not well taken.

Next, Furmanite argues that deponents Stan Pitts, Greg Foushi, and Michael Mainelli's numerous lies during their respective depositions served to conceal facts which contributed to Furmanite's delay in seeking to leave to amend. Namely, Furmanite argues that the deponents lied about the extent of the alleged conspiracy, the amount of business the former employees re-directed from Furmanite to TDW, the extent of confidential information, such as pricing information, shared with TDW, and the extent of TDW's communication and salary negotiations with the former employees. (Doc. No. 130, pp. 13-23). After reviewing the evidence and arguments submitted by the parties, the Court finds insufficient evidence to support these contentions. Furthermore, Furmanite's argument is intertwined with numerous issues of fact which remain to be litigated at trial. Lastly, and most importantly, the issues about which the deponents allegedly lied were issues which were raised by Furmanite in the allegations in its First Amended Complaint. (*See* Doc. No. 61). As explained above, if sufficient evidence existed to plead such torts in the Amended Complaint, sufficient evidence existed to assert a claim for punitive damages. The existence of additional misrepresentations on the part of such witnesses does not excuse Furmanite's delay in seeking leave to amend the pleadings in a timely manner.

Lastly, even if Furmanite could demonstrate that such contentions were true, the Court finds that the Magistrate Judge's did not err in his determination that such new evidence would not amount to such "blockbuster" evidence as to provide compelling reasons for an untimely amendment of the pleadings. (Doc. No. 128-3, p. 49). For these reasons, the Court will overrule Furmanite's objection to the Order of the United States Magistrate Judge. (Doc. No. 128).

**Conclusion**

Based on the foregoing, the Court **OVERRULES** Plaintiff's Objections to Magistrate's Order Denying Plaintiff's Motion for Leave to Add Prayers for Punitive Damages, filed by Plaintiff Furmanite America, Inc. on February 9, 2007. (Doc. No. 128).

**DONE and ORDERED** in Chambers in Orlando, Florida this 30th day of March, 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record