UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FURMANITE AMERICA, INC.,

Plaintiff,

-vs.-                                                    Case No.:  6:06-cv-641-Orl-19JGG

T.D. WILLIAMSON, INC., TDW
SERVICES, INC., GREG FOUSHI,
JOSE DELGADO, SAUL FERRER,
JAMES JACKSON, ROBERT JOLIN,
MICHAEL MAINELLI, REBECCA
MINERVINO, JAMES OVERSTREET,
ROBERT SCHMIDT, NICOLE
TURNER, JOHN FOUSHI and BRYAN
McDONALD,

Defendants.

_____

## ORDER

This case comes before the Court on the following:

1.      Motion for Summary Judgment (with Incorporated Memorandum of Law),
filed by Defendants T.D. Williamson, Inc., TDW Services, Inc., and Bryan
McDonald on December 29, 2006; (Doc. No. 101);

2.      Former Employees' Motion for Summary Judgment (with Incorporated
Memorandum of Law), filed by Defendants Greg Foushi, Jose Delgado, Saul
Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino,
James Overstreet, Robert Schmidt, Nicole Turner, and John Foushi on
December 29, 2006; (Doc. No. 102);

-1-

3.      Plaintiff's Response to Defendants, T.D. Williamson, Inc., TDW Services, Inc., and Bryan McDonald's, Motion for Summary Judgment, filed by Plaintiff Furmanite America, Inc., ("Furmanite") on January 29, 2007; (Doc. No. 119); and

4.      Plaintiff's Response to Former Employees' Motion for Summary Judgment, filed by Furmanite on January 30, 2007.  (Doc. No. 120).

## Background

Furmanite and T.D. Williamson, Inc. are both firms which operate in the industrial pipeline repair industry.  Prior to December of 2005, Furmanite employed Defendants Greg Foushi, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, Nicole Turner, John Foushi as employees in its Orlando, Florida service center.  (*E.g*., Doc. No. 61, ¶ 24).  On March 31, 2006, Greg Foushi, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, and Nicole Turner all resigned from their employment with Furmanite, allegedly without providing any advance notice of their resignations and leaving Furmanite's Orlando office without staffing.[1]  (*Id*. at ¶ 31).  On or about April 3, 2006, these individuals interviewed and completed paperwork to become employees of T.D. Williamson.  (*E.g., id*. at ¶ 35; Doc. No. 101, p. 8, ¶ 12).  The employees brought various items with them to T.D. Williamson.  An employee for T.D. Williamson arranged to have a U-Haul truck pick up the employees' materials.  (*E.g., * Doc. No. 120-31,

---

[1]     John Foushi had previously resigned on March 17, 2006.  (*E.g.*, Doc. No. 61, ¶ 28).

pp. 7-8).  It is undisputed that one of the items Greg Foushi and Michael Mainelli brought with them to T.D. Williamson from Furmanite is the ACT Database, a contact management software program.  (*E.g.,* Doc. No. 101, p. 9, ¶ 15).

The crux of the instant case is an alleged conspiracy on the part of the corporate[2] and individual Defendants[3] to cripple Furmanite's Orlando office by having the former employees simultaneously resign on March 31, 2006 while also removing Furmanite's property and engaging in trade slander by disparaging Furmanite to its customers.  (*See generally* Doc. No. 61).  Furmanite alleges that Defendants' actions amount to tortious interference with business relationships, (Count I), Trade Slander, (Count II), a violation of Section 688.001 et seq., Florida Statutes, (Count III), breach of confidentiality agreements, (Count IV), conversion, (Count V), a violation of the Florida Unfair and Deceptive Trade Practices Act, (Count VI), economic boycott, (Count VII), civil conspiracy, (Count VIII), and a breach of the duty of loyalty on the part of John and Greg Foushi. (Count IX).[4]  TDW and the individual Defendants deny the above allegations, and Defendants Greg Foushi and Michael Mainelli counterclaim for breach of contract and unpaid commissions.  (*See generally* Doc. Nos. 65, 66).  TDW and the individual Defendants each move for summary judgment on all Counts of the Amended Complaint, arguing that no genuine issue of material fact exists and that Defendants are entitled to judgment as a matter of law.  In the alternative,

---

[2] For the purposes of the instant motion, the Court will refer to the corporate Defendants, T.D. Williamson, Inc., and TDW Services, Inc. simply as "TDW."

[3] The last named individual Defendant in the instant case, Bryan McDonald, is an employee of T.D. Williamson, Inc., and is alleged to have assisted the former employees in their actions.  (*E.g.*, Doc. No. 61, ¶ 15, 71).

[4] (*See* Doc. No. 61).

Defendants ask for partial summary judgment on those claims for which no genuine issue of material fact is present. Furmanite argues in response that genuine issues of material fact exist for all Counts of the Amended Complaint.

## Standard of Review

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied its burden, a court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. A court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then a court must not grant summary judgment. *Id.* (citation omitted).

Once a movant who does not bear the burden of proof on the pertinent claim or defense satisfies its initial burden under Rule 56(c) of demonstrating the absence of a

genuine issue of material fact, the burden shifts to the party bearing the burden of proof on the pertinent claim or defense to come forward with specific facts showing that there is a genuine issue for trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant must demonstrate that there is a material issue of fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (citing *Anderson*, 477 U.S. 242). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962)). All justifiable inferences are to be drawn in favor of the non-movant, and the evidence presented by the non-movant is to be believed by the court. *Tipton*, 965 F.2d at 999 (quoting *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact remaining for trial. *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)) (internal quotation marks omitted).

## Analysis

### A. License

Defendants seek summary judgment on Furmanite's claims for lost business

opportunities in Counts I through VIII, arguing that Furmanite cannot legally recover such damages because it was not licensed to perform "line stop" and "wet tap" services, and thus that it could not legally undertake these jobs under Section 489,128, Florida Statutes.  This argument is not well taken.

First, an issue of fact exists as to whether Furmanite possessed a valid license.  It is undisputed that prior to the resignation of John Foushi, Furmanite had no licensing problems because John Foushi was a licensed, qualified individual under Florida law.  (*E.g.,* Doc. No. 101, p. 10; Doc. No. 119, pp. 7-8).  Furmanite claims, and John Foushi admits, that he granted Furmanite permission to use his license after he retired from the company.  (Doc. No. 119-6, p. 7).  However, John Foushi claims, and Furmanite denies, that he granted such permission with a condition that Furmanite's right to use his license would expire if his son, Greg Foushi, ever left the company.  (*E.g.,* Doc. No. 119-6, pp. 7-8; Doc. No. 119-5, p. 2).  Thus, an issue of fact exists as to the scope of the agreement between John Foushi and Furmanite regarding Furmanite's right to use the Foushi license after the resignation of Greg Foushi.

Furthermore, TDW offers no evidence that Furmanite's claims for lost business opportunities encompass only claims for work for which a license was required.  Section 489.128 only bars unlicensed contractors from enforcing contracts for work requiring a license. § 489.128, Fla. Stat. (2006).  A license is not required for all potential work a contractor could conceivable undertake.  *See, e.g., id.* at § 489.128(b) ("if no state or local license is required for the scope of work to be performed under the contract, the individual performing that work shall not be considered unlicensed.").  In fact, an employee of TDW

testified that its qualifying individual does not live in the State of Florida and only oversees one or two projects per year. (Doc. No. 119-10, p. 3). Construing all reasonable inferences in favor of the non-moving party, Furmanite could have suffered lost business opportunities for which a license was not required even if it had no permission to use the Foushi license. For these reasons, the Court will deny Defendants' motion for summary judgment as to the licensing issue.[5]

## B. Trade Slander

Count II of the Amended Complaint avers that all Defendants are liable for trade slander for making false statements to other persons regarding the condition of Furmanite's business and its ability to perform contracts. (Doc. No. 61, p. 9). Defendants deny such allegations and argue that there is no evidence of trade slander in the instant case.

To recover for slander or libel under Florida law, a plaintiff must demonstrate 1) that the defendant published a false statement; 2) about the plaintiff; 3) to a third party; and 4) the party suffered damages as a result of the publication of the statement. *E.g., Thompson v. Orange Lake Country Club, Inc.*, 224 F.Supp.2d 1368, 1376 (M.D. Fla. 2002); *Valencia*

---

[5]     Furthermore, the Court questions whether Section 489.128 bars an unlicensed contractor from being a Plaintiff in the instant case. The statute in question only bars unlicensed contractors from attempting to enforce a contract in law or in equity. The Court's independent research has produced no Florida case extending the statute beyond its plain language to bar damages for tort claims. Defendants cite to the case of *Marco Island Cable, Inc. v. Comcast Cablevision of the South, Inc.*, No. 2:04-cv-26-FTM-29DNF, 2006 WL 263605 (M.D. Fla. Feb. 2, 2006), for the proposition that Furmanite lacks standing in the instant case. However, *Marco Island* is distinguishable because in that case Plaintiff was an unlicensed cable operator who was barred by federal law from providing any cable services without a franchise. *Id.* at *4. In addition, that case involved whether the plaintiff could establish antitrust standing. *Id.* No antitrust claims are pled in the instant case.

*v. Citibank Int'l*, 728 So. 2d 330, 330 (Fla. 3d DCA 1999).

In its memorandum in opposition, Furmanite argues it has evidence of two statements made by Greg Foushi to potential clients that Furmanite had gone "bankrupt." It offers no evidence or argument as to alleged slanderous statements made by any Defendant other than Greg Foushi, or the existence of an agreement or plan between the Defendants regarding these alleged statements. After examining the record, the Court agrees with Defendants that there is no genuine issue of material fact concerning this claim as to Defendants other than Greg Foushi and that Defendants T.D. Williamson, Inc., TDW Services, Inc., Bryan McDonald, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, Nicole Turner, and John Foushi are entitled to judgment as a matter of law on Furmanite's trade slander claim.

Summary judgment must also be granted in favor of Greg Foushi, as there is no evidence in the record that Greg Foushi ever made a knowingly false statement about Furmanite. Furmanite argues that Greg Foushi told Daniel Salinas of Poole & Kent Construction Company that Furmanite had gone bankrupt. (Doc. No. 120, p. 11). However, there is no support for this contention in the record. Daniel Salinas testified that Greg Foushi told him that Flowserve Corporation "no longer existed." (Doc. No. 120-30, p. 4). Furmanite has presented no evidence that Greg Foushi ever said anything about Furmanite's solvency or its ability to service it customers, and Greg Foushi confirmed this in his deposition. (Doc. No. 120-2, p. 18). In fact, the only evidence of any statement made by Greg Foushi about Furmanite was the factual statement made in mid-April of 2006 that the former employees had resigned. (*Id.*) Thus, since Furmanite has presented no evidence of

any false statement about Furmanite published by Greg Foushi or any other Defendant, the Court will grant summary judgment as to all Defendants on Count II of the Complaint.

### C. Misappropriation of Trade Secrets

Count III of the Amended Complaint alleges that Defendants, with the exception of John Foushi and Bryan McDonald, misappropriated trade secrets in violation of Section 688.001, et. seq., Florida Statutes.  For the reasons that follow, the Court finds that genuine issues of material fact exist and that summary judgment is not warranted on this Count.

Defendants do not dispute that the former employees took the following items with them to TDW after their resignation on March 31, 2006: 1) customer lists within the ACT database, a contact management software program used by Greg Foushi and Michael Mainelli; 2) a log of quotes for "hot-tapping" and "line-stopping" services; and 3) computer files and contracts.  (*E.g.,* Doc. No. 102, pp. 8-11).[6]

In order to prevail on a claim for misappropriation of trade secrets under Florida law, a plaintiff must demonstrate that the defendants misappropriated secret information from the plaintiff of which the plaintiff made reasonable efforts to maintain the secrecy, resulting in damages.  *See* § 688.004, Florida Statutes; *Lee v. Cercoa, Inc.*, 433 So. 2d 1, 2 (Fla. 4th DCA 1983).  Information that is generally known or readily available to third parties generally cannot qualify for trade secret protection under Florida law.  *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1995).

Defendants argue that Furmanite cannot demonstrate ownership of the ACT database,

---

[6]     Furmanite also contends that the former employees took documents and files from Furmanite's office, which Defendants dispute.  (*Id*. at pp. 11-12).

cannot demonstrate that any of the other alleged documents constitute a trade secret, and likewise cannot show that it took sufficient steps to protect any of the taken information. While Defendants may be able to demonstrate such points at trial, the Court finds that Defendants have not demonstrated that no genuine issue of material fact exists with regard to these highly fact-specific allegations.

Courts are extremely hesitant to grant summary judgment regarding the fact-intensive questions of the existence of a trade secret or whether a plaintiff took reasonable steps to protect its trade secrets.  "The term 'trade secret' is one of the most elusive and difficult concepts in the law to define.  The question of whether an item taken from an employer constitutes a 'trade secret,' is of the type normally resolved by a fact finder after full presentation of evidence from each side."  *Lear Siegler, Inc. v. Ark-Ell Springs, Inc*., 569 F.2d 286, 289 (5th Cir. 1978); *see also Learning Curve Toys, Inc., v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003).  Courts have previously found an ACT database and information such as that contained in quote logs can contain confidential, trade secret information. *E.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dunn*, 191 F.Supp.2d 1346, 1352 (M.D. Fla. 2002); *Thomas v. Alloy Fasteners, Inc.*, 664 So. 2d 59, 59 (Fla. 5th DCA 1995); *Conseco Finance Serv. Corp. v. North American Mortgage Co.*, 381 F.3d 811, 819-20 (8th Cir. 2004).

Summary judgment is likewise inappropriate in the instant case, as issues of fact exist regarding Furmanite's claims.  First, a "full presentation of evidence" from each side" is required regarding whether the ACT database and quote log constitute a trade secret.  Defendants argue that the information in the quote log is not a trade secret because none of

the information was provided by Furmanite.  Defendants further claim that the information in the ACT database is not a trade secret because Greg Foushi and Michael Mainelli entered the information themselves, and the names and contact information are available from other sources.  Such arguments are insufficient to demonstrate the absence of a genuine issue of material fact.  Furthermore, Furmanite has presented evidence that information in the quote log and ACT database was provided to the employees by Flowserve, Furmanite's predecessor and the company whose records Furmanite purchased.  (Doc. No. 120-2, pp. 29-30).  Thus, summary judgment is not appropriate on this issue.

Defendants next argue that neither Furmanite nor its predecessors made sufficient effort to claim ownership of the ACT database.  (Doc. No. 102, p. 9).  However, Defendants point to no specific instances of Greg Foushi or Michael Mainelli ever claiming ownership of such database to Furmanite or of Furmanite or its predecessor disclaiming ownership of the ACT database.  This, without more, is insufficient to demonstrate that the database was not the property of the employer, Furmanite.

Defendants further argue that Furmanite did not take sufficient steps to protect the confidentiality of the information contained in the ACT database, the quote log, or in Furmanite's computer or paper files.  However, Furmanite had each Defendant execute a confidentiality agreement which prohibited the dissemination of, *inter alia*, customer files, computer records, and financial data.  (*See, e.g.,* Doc. No. 120-9).  Defendants point to no instance where Furmanite allowed its employees to disclose any of the above information to third parties.  In fact, Greg Foushi and Michael Mainelli testified that they did not share the information in the ACT database and did not know if the two databases they respectively

-11-

used were identical.  (Doc. No. 120-2, pp. 26-28; Doc. No. 120-13, p. 13).  Furthermore, Defendants' contentions are belied by the fact that as soon as the quote log was discovered at TDW, it was immediately returned the following day.  (Doc. No. 120-27, pp. 3-4).  Based on the limited evidence presented, the Court cannot conclude as a matter of law that the measures taken by Furmanite did not give the employees reason to know that Furmanite intended or expected the secrecy of such information be maintained.

Next, Defendants appear to argue that partial summary judgment is warranted because TDW never used the information contained in the quote log or allegedly missing files.[7]  Furmanite argues that sufficient evidence exists on this issue to survive summary judgment, and also that use of the trade secret is not required.  If Furmanite cannot show at trial that TDW used any of the information in the quote log or missing files or that Furmanite suffered any damages in the actual loss of such materials, Furmanite cannot recover for the misappropriation of such material even if it demonstrates that the materials constituted a trade secret.[8]

However, Defendants have not met their burden of demonstrating that no use of the information took place in the instant case.  TDW possessed the quote log for nineteen (19)

---

[7]     Defendants concede that Greg Foushi and Michael Mainelli continue to use the ACT database in the course of their employment with TDW.

[8]     *See, e.g., Alphamed Pharms. Corp. v. Arriva Pharms, Inc.*, 432 F.Supp.2d 1319 (S.D. Fla. 2006) (Defendants did not violate statute by taking documents containing competitor's trade secrets from its trash, absent showing that competitor suffered any actual damages as result or that competitor obtained injunctive relief, because no damages were shown and nominal damages were not available under statute).

days before returning it to Furmanite,[9] and Furmanite alleges that some information from their files is still missing.  Considering the facts of the instant case and construing all reasonable inferences in favor of the non-movant, the Court cannot conclude as a matter of law that no use of the information occurred.

Lastly, Defendants argue that there is no evidence that any computer files were taken by the former employees.  However, Furmanite's corporate representative stated that files were missing the day the employees left.  (*E.g.,* Doc. No. 119-12, pp. 4, 5).  Thus, an issue of fact also exists as to misappropriation of Furmanite's files.  For these reasons, the motions for summary judgment on Count III of the Complaint are denied.

## D.  Breach of Confidentiality Agreements

Count IV of the Amended Complaint avers that Defendants, with the exception of Bryan McDonald, are all liable for breaching the confidentiality agreements between the former employees and Furmanite.  (Doc. No. 61, p. 11).  Defendants contend that summary judgment must be granted as to all Defendants.  The Court finds that summary judgment must be granted in favor of TDW but denied as to the individual Defendants named in the Complaint except for Bryan McDonald.

As TDW points out, corporate defendants T.D. Williamson, Inc, and TDW Services, Inc. were never parties to a confidential agreement with Furmanite.  Furmanite concedes this point and further concedes that Count IV was not meant to be directed toward the corporate Defendants.  (Doc. No. 119, p. 19).  Thus, the Court will grant summary judgment on Count IV in favor of TDW.

---

[9]       (*E.g.,* Doc. No. 120-27, p. 4).

However, summary judgment is not warranted with respect to the remaining individual Defendants named in Count IV.  The former employees argue, as they did with respect to Count III,  that they are entitled to judgment as a matter of law because Furmanite cannot establish that any information obtained from the former employees was a trade secret, that any information was misappropriated, that it has suffered any damages, or that any information was used or shared by the former employees or TDW.  (Doc. No. 102, p. 19).  For the reasons explained above, numerous issues of fact exist as to these defenses which make summary judgment inappropriate.   Furthermore, unlike a trade secrets claim, Furmanite need not prove that the former employees or TDW used the removed information in order to prevail on a claim for breach of the confidentiality agreement, as the agreement does not limit damages to this situation.  (*See* Doc. No. 120-9).    Thus, Defendants' contention that no information was shared with TDW is not determinative of this issue.  For these reasons, the Court will deny the former employees' motion for summary judgment on Count IV.

## E.  Conversion

In Count V of the Amended Complaint, Furmanite alleges conversion claims against all Defendants for the misappropriation of its electronic and paper files, equipment, and "the value of Furmanite's Orlando service center."  (Doc. No. 61, pp. 11-12).  Defendants claim that summary judgment must be granted as to all Defendants as there is no evidence of conversion.  Defendants also argue that Florida law does not recognize a conversion claim for the value of Plaintiff's service center.  (Doc. No. 102, pp. 19-21).

Under Florida law, conversion is an intentional tort consisting of an unauthorized act

which deprives another of his property, permanently or for an indefinite time.  *E.g., Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So.2d 1157, 1160-61 (Fla. 3rd DCA 1984) (footnote omitted) (citing *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 33 So.2d 858 (Fla. 1948) (en banc)).  The essence of the tort is not the acquisition of the property; rather, it is the wrongful deprivation of the property.  *Star Fruit Co.*, 33 So.2d at 860.

In the case at bar, summary judgment must be granted on Furmanite's conversion claim for the value of its Orlando office as to all named Defendants, but denied with respect to its claims for conversion of files and equipment.  Thus, the Court will grant partial summary judgment on Count V of the Complaint.

There is no genuine issue of material fact with regard to Furmanite's conversion claim for the value of its Orlando office.  As Defendants point out, there is no evidence that TDW or the former employees ever acted to deprive Furmanite of its Orlando service center.  Having satisfied its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to Furmanite to come forward with specific facts showing that there is a genuine issue for trial.  *Fitzpatrick*, 2 F.3d at 1115-17.  Furmanite has not done so, arguing only that circumstantial evidence exists to survive summary judgment on all conversion claims.

Furthermore, summary judgment is appropriate on this issue because Florida law does not recognize a claim for conversion of the value of a business under the instant circumstances.  Courts have generally been hesitant to extend common law actions for conversion further than to claims for the misappropriation of a tangible chattel or the misappropriation of intangible rights which are identified or merged in a document or other

-15-

tangible chattel.  *See, e.g., In re Estate of Corbin*, 391 So. 2d 731, 733 n. 1 (Fla. 3d DCA 1980); *Ippolito v. Lennon*, 150 A.D.2d 300, 303 (N.Y. App. 1989).  Furmanite cites solely to the *Corbin* case for support that its claim can survive summary judgment.  However, in *Corbin*, Florida's Third District Court of Appeal held that an action for conversion may be brought for the intangible interests in a business venture where the personal representative of an estate unlawfully sold the estate's business to a third party and kept the consideration for the transfer.  Thus, the Court reasoned, an action for conversion should be allowed because the defendant deprived the property owner of its rights over the business and did so in a fashion where restitution "may well be an inadequate remedy."  *Id.* at 733, n. 1.  *Corbin* bears no resemblance to the allegations of the instant case, where Defendants are not alleged to have deprived Furmanite of the ownership or possession of its Orlando office.  Thus, the Court grants summary judgment on this issue in favor of Defendants.

Material issues of fact exist, however, with respect to Furmanite's claims for conversion of its files and equipment.  On the day he resigned, Greg Foushi admitted copying some of his files to a disk and deleting others from his work computer, in part because he was "upset." (Doc. No. 119-13, pp. 5-8).  Furmanite initiated an inventory of its Orlando office in April after the resignation of the former employees and discovered that electronic and paper files regarding business contacts, job descriptions, and financial information were missing.  (Doc. No. 119-12, pp. 3-4, 7-8, 14-15).  Furthermore, TDW arranged to have a truck pick up materials of the former employees and transport the materials to TDW.  Gary Goins, TDW's manager, stated that tools were among the things moved, but he never checked to see if any of Furmanite's equipment was among those items

removed.  (Doc. No. 119-10, pp. 6-7).  The former employees all deny moving any Furmanite equipment.  (*E.g.*, Doc. No. 102-2) (declarations of former employees denying the taking of Furmanite property).  Construing all reasonable inferences in favor of Furmanite, a genuine issue of material fact exists as to whether Furmanite's property was among the materials taken by the former employees.

## F.  Tortious Interference

Count I of the Amended Complaint alleges that all Defendants tortiously interfered with Furmanite's business relationships with its customers, causing Furmanite damages. (Doc. No. 61, p. 8).  Defendants move for summary judgment, arguing that because Furmanite's claims for trade slander and misappropriation of trade secrets must fail, Furmanite cannot establish any interference with a business relationship under Florida law.

Pursuant to Florida law, Plaintiff must establish five elements to state a claim for tortious interference with an advantageous business relationship:  (1) the existence of a business relationship under which the claimant has rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship; (4) by defendant; and (5) damage to the claimant cause by the interference.  *E.g., Rudnick v. Sears, Roebuck, and Co.*, 358 F.Supp.2d 1201, 1205 (S.D. Fla. 2005).

In the instant case, the Court finds Defendants have not met their burden of establishing that no genuine issue of material fact exists with respect to Furmanite's tortious interference claim.  Genuine issues of material fact exist as to whether the former employees, acting in concert with TDW and Bryan McDonald, misappropriated Furmanite's trade secrets, files, equipment, and financial information, and issues of fact exist as to whether

such actions constitute tortious interference under Florida law.  Defendants admit that the former employees removed property from Furmanite's Orlando office with the assistance of TDW, although the exact contents of what was removed is in dispute.  (*E.g.,* Doc. No. 119-13, pp. 5-8; Doc. No. 119-12, pp. 3-4, 7-8, 14-15; Doc. No. 102-2).  TDW's manager confirms that items were removed but testified he had know way of knowing to whom the items belonged, and he did not check to see if Furmanite material was hauled away from Furmanite's office.  (Doc. No. 119-10, pp. 6-7).  Florida courts have stated that the alleged conversion and unauthorized use of a customer list under certain circumstances could constitute tortious interference with business relationships.  *E.g., Viscito v. Fred S. Carbon, Inc.*, 717 So. 2d 586 (Fla. 4th DCA 1998).  For these reasons, Defendants' claim for summary judgment on Count I of the Complaint is denied.

## G.  Florida Deceptive and Unfair Trade Practices Act

Count VI of the Amended Complaint avers that TDW, Bryan McDonald, and John Foushi are liable to Furmanite for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). (Doc. No. 61, pp. 12-13).  Defendants argue that summary judgment on Count VI must be granted for several reasons.  First, Defendants argue that actions for damages under FDUTPA apply only to consumer transactions.  Next, they argue that summary judgment is warranted because Plaintiff's allegations are based on the misappropriation of trade secrets and confidential information and TDW's hiring of the former employees, none of which constitute an unfair or deceptive trade practice.  (Doc. No. 101, pp. 14-22).

FDUTPA broadly declares unlawful any unfair or deceptive acts or practices

committed in the conduct of any trade or commerce.   § 501.204(1), Fla. Stat.   Section 501.211 provides that any person who has suffered a loss as a result of such practices may commence a private action for actual damages and possibly attorneys' fees and court costs. § 501.211(2), Fla. Stat.  The Florida Supreme Court has emphasized that the remedies of the FDUTPA "are in addition" to other remedies available under state or local law.  *Pinellas County Department of Consumer Affairs v. Castle*, 392 So.2d 1292, 1293 (Fla. 1980).  A practice is unfair under FDUTPA if it offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  *Suris v. Gilmore Liquidating, Inc*., 651 So.2d 1282, 1283 (Fla. 3d DCA 1995).  The Florida Supreme Court has recently held that the statute "applies to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single contract."  *PNR, Inc. v. Beacon Prop. Mgt. Inc.,* 842 So. 2d 773, 777 (Fla. 2003).

Prior to July 1, 2001, FDUTPA provided that "[i]n any individual action brought by a *consumer* who has suffered a loss as a result of a violation of this part, such *consumer* may recover actual damages, plus attorney's fees and court costs."   § 501.211(2), Fla. Stat. (emphasis added).  However, FDUTPA was amended in 2001, and the amendment replaced the word "consumer" with the word "person."  The current version of FDUTPA provides that "[i]n any action brought by a *person* who has suffered a loss as a result of a violation of this part, such *person* may recover actual damages, plus attorney's fees and court costs." § 501.211(2), Fla. Stat. (emphasis added).  This amendment demonstrates a clear legislative intent to allow a broader base of complainants who have been injured by violations of

FDUTPA to seek damages, not just injunctive relief.  *See, e.g., Advanced Protection Tech., Inc. v. Square D Co.*, 390 F.Supp.2d 1155, 1164 (M.D. Fla. 2005); *Gritzke v. M.R.A. Holding, LLC*, No. 4:01CV495-RH, 2002 WL 32107540, at *4 (N.D. Fla. Mar. 15, 2002). "With the deletion of *consumer transaction* from FDUTPA, it would seem that such business entity *consumers* could sue for damages from outlawed acts and practices in ordinary business transactions without regard to whether the claimant was acting in the capacity of consuming goods or services.  At least, nothing in section 501.211(2) purports to state otherwise." *Beacon Prop. Mgt., Inc. v. PNR, Inc.*, 890 So. 2d 274, 278 (Fla. 4th DCA 2004) (emphasis in original).

    After the amendments to the FDUTPA, courts have opined on several occasions that actions under the statute could be sustained absent the failure to allege that FDUTPA violation arose from a "consumer transaction."  *See, e.g., Gritzke*, 2002 WL 32107540 at *4 (§ 501.211(2), as amended, merely requires a "person" who "has been damaged by [a] defendant's violation" of the statute);  *Niles Audio Corp. v. OEM Systems Co., Inc.*, 174 F.Supp.2d 1315, 1319-20 (S.D. Fla. 2001) (concluding that legislature's replacement of the word "consumer" with the word "person" in § 501.211(2) was intended to make damages remedy available to anyone aggrieved by violation of statute); *see also Beacon Property*, 890 So. 2d at 278 (rejecting the per se argument that a judgment was erroneous "simply because the facts at trial do not involve a consumer transaction").  This Court has recently held that the 2001 amendments to FDUTPA allow a plaintiff to seek damages despite a failure to allege that the unfair and deceptive conduct arose from a "consumer transaction." *See True Title, Inc. v. Blanchard*, Case No. 6:06-cv-1871-Orl-19DAB, 2006 U.S. Dist. LEXIS 95069,

at *10 (M.D. Fla. Feb. 5, 2006).  Thus, the Court cannot agree with Defendants' contention that summary judgment is warranted in the instant case because no consumer transaction is involved.

Furthermore, summary judgment on Furmanite's FDUTPA claim is inappropriate because of the numerous issues of fact which remain regarding TDW's alleged misappropriation of Furmanite's trade secrets and confidential information. Accepting all reasonable inferences from the facts of the case, TDW's alleged plan to hire all of Furmanite's employees away *en masse*[10] and use them to misappropriate Furmanite's trade secrets would constitute unlawful and unfair or deceptive acts or practices under the broad reading Florida courts traditionally apply to FDUTPA.[11]  In fact, Stanley Pitts, a manager for TDW, admitted in his deposition that the conduct of the TDW employees in the instant case in his opinion was not up to the "ethical standards of TDW."  (Doc. No. 119-3, p. 6).  In

---

[10]     There is evidence in the record to create a genuine issue of material fact with regard to TDW's alleged hiring plan.  John Foushi discussed with the former employees employment opportunities with TDW both before and after his resignation.  (*E.g.,* Doc. No. 101-7).  Furthermore, Furmanite has produced e-mails between Greg Foushi and Stanley Pitts of TDW which, construing all inferences in favor of Furmanite, appear to discuss the timing and repercussions of a mass resignation of the former employees.  (*See* Doc. No. 119-4, p. 5) (e-mail by Greg Foushi to Stanley Pitts discussing how it would be "real aggressive to be in by April 3rd" and e-mail statement by Greg Foushi to Stanley Pitts that if there is a delay in having a lease "before the cat is out of the bag....we could all be exposed").

[11]     *See, e.g., MJS Publications, LLC v. Hal Leonard Corp.*, No. 8:06-cv-488-T-30EAJ, 2006 WL 1208015, at *2 (M.D. Fla. May 4, 2006) ("Therefore, when considering whether a defendant's actions support a finding of 'unfair methods of competition, unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce,' courts have regarded the concept as 'extremely broad.' [...]" (internal citations omitted).

addition, Defendant Bryan McDonald stated that although he denied any wrongdoing on the part of TDW, if the facts were as Furmanite believed them to be, TDW's actions would amount to "inappropriate" and "unethical" conduct in the marketplace.  (Doc. No. 119-17, p. 4).  For these reasons, the Court finds that issues of fact exist which preclude granting summary judgment on Furmanite's FDUTPA claims.

### H.  Conspiracy/Economic Boycott

Count VII of the Amended Complaint alleges that all Defendants are liable to Furmanite under the theory of economic boycott.  Specifically, Furmanite alleges that the coordination of the simultaneous resignations of the former employees amounted to an economic boycott.  (Doc. No. 61, pp. 13-14).

Economic boycott is a cause of action sounding in civil conspiracy under Florida law. Some courts have also referred to this as the "force of numbers exception" to the general rule that the basis for a civil conspiracy must be an independent wrong or tort which would constitute a cause of action if the wrong were done by one person.  *See Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541-42 (11th Cir. 1990).  Under this exception, the "conduct complained of would not be actionable if done by one person, but by reason of force of numbers or other exceptional circumstances, the defendants possess some peculiar power of coercion, which gives rise to an independent tort of conspiracy, sometimes referred to as an 'economic boycott.' " *American Diversified*, 439 So.2d at 906. A showing of mere malice is not enough. *Id*. The result of the defendants' concerted action "must be different from anything that could have been accomplished separately." *Kee,* 918 F.2d at 1542.

In the *Kee* case, the Plaintiff sought to recover under a civil conspiracy theory that

several companies acted in concert to destroy the plaintiff's business by informing the state commissioner of his alleged wrongdoings and thus causing him to be investigated, by cancelling the plaintiff's general agent's contracts, and by withholding from him commissions he had allegedly earned. In refusing to find that the "narrow" force of numbers exception would allow the plaintiff to recover under his theory of the case, the Eleventh Circuit reasoned that "[e]ach company could independently inform the insurance commissioner of its suspicions, cancel the at-will agency contracts, and withhold commissions pending resolution of the claims in court. These independent acts taken together did not amount to something larger than the sum." *Id.* at 1542.

In the instant case, there is no dispute that the former employees were at-will employees who could all legally resign at any time. Furmanite's employee handbook stated that either Furmanite or the employee could end the employment "at any time, with or without cause, notice, or reason." (Doc. No. 101-9, p. 3). Applying the analysis used by the Eleventh Circuit in *Kee* to the instant case, Defendants rightfully argue that there is no evidence in the record that the alleged agreement by the Defendants for the former employees to resign caused any harm in addition to that which would have been caused if the employees had all individually decided to resign without agreement. *See also American Diversified*, 439 So. 2d at 906 ("the allegations do not show that appellees, by force of numbers or other exceptional circumstances ... attempted to destroy appellant's business by acting together").

Having demonstrated the absence of a genuine issue of material fact on this issue, the burden shifts to Furmanite to come forward with specific facts showing that there is a

genuine issue for trial.  *Fitzpatrick*, 2 F.3d at 1115-17.  Furmanite has not done so.

Furmanite attempts to distinguish *Kee* by arguing that if the former employees had resigned

independently, Furmanite would have suffered less in damages.  However, Furmanite offers

no evidence to support this proposition.[12]  For these reasons, the Court grants summary

judgment on Count VII of the Complaint.

## I.  Civil Conspiracy

Count VIII of the Amended Complaint alleges that all Defendants are liable to

Furmanite under the theory of civil conspiracy.  Unlike Furmanite's claim for economic

boycott, Furmanite alleges that the overt acts in furtherance of such conspiracy were

Defendants' actions in tortiously interfering with Furmanite's business relations, and

conversion of Furmanite's paper and electronic files and equipment.  (Doc. No. 61, pp. 14-

15).  Thus, because Furmanite has alleged an unlawful act or act in furtherance of such

conspiracy, and several issues of fact exist as to whether tortious interference and conversion

actually took place, it would be inappropriate to grant summary judgment on Count VIII of

the Complaint.  *See American Diversified,* 439 So. 2d at 906-07 (despite dismissing

economic boycott claim, allegations of tortious interference in the complaint that former

employee diverted to new employer inquiries and leads were sufficient to state a cause of

action for civil conspiracy).  In the instant case, Defendants' lone argument is that summary

judgment must be granted on the conspiracy claim if the Court grants summary judgment on

---

[12]     Matthew Sisson offered that, in Furmanite's opinion, if fewer employees had
        resigned on March 31, 2006 and more had stayed employed with the company,
        Furmanite would have been "better off," (Doc. No. 119-12, p. 19), but this
        speculation is unsupported in the record and furthermore is not the proper inquiry
        under *Kee*.

the conversion and tortious interference claims.  As the Court has not granted summary judgment on these claims, Defendants have not met their burden of demonstrating that no genuine issue of material fact exists with regard to the civil conspiracy claim.

### J.  Breach of the Duty of Loyalty

Count IX of the Amended Complaint avers that John Foushi and Greg Foushi are liable to Furmanite for breaching their respective duties of loyalty to Furmanite.  Furmanite alleges that John Foushi breached his duty of loyalty by holding a meeting with the former employees while he was still employed with Furmanite in which he solicited them to accept employment with TDW, and that Greg Foushi breached his duty of loyalty by orchestrating the simultaneous resignations of the former employees without notice.  (Doc. No. 61, p. 15).

The general rule with regard to an employee's duty of loyalty to his employer is that an employee does not violate his duty of loyalty when he merely organizes a competing business during his employment to carry on a rival business after the expiration of his employment.  *Fish v. Adams*, 401 So. 2d 843, 845 (Fla. 5th DCA 1981).  Mere preparation to open a competing business, such as assisting in the opening of a bank account, the obtaining of office space and other services with respect to the future employer are likewise insufficient to demonstrate a breach of such duty.  *E.g., Harllee v. Professional Serv. Indust., Inc.*, 619 So. 2d 298, 300 (Fla. 3d DCA 1992).  Additionally, an employee may take with him a customer list that he himself has developed.  *Id.*  However, an employee may not engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers and other employees prior to the end of his employment.  *Id.*; *Insurance Field Services, Inc. v. White*

*& White Inspection & Audit Service, Inc.*, 384 So.2d 303 (Fla. 5th DCA 1980).   An employee does not have to be managerial in order to have this duty of loyalty.  *Fish*, 401 So. 2d at 845.     In the instant case, summary judgment on this issue must be denied with respect to both Defendants.   Issues of fact which exist as to whether Greg Foushi misappropriated trade secrets and company property and engaged in tortious interference preclude the entry of summary judgment as to that Defendant.   Furthermore, Furmanite has presented evidence of at least one e-mail by Greg Foushi sent from Furmanite's computers to a contractor encouraging it to do business with TDW.   (*See* Doc. No. 119-4, p. 2) (e-mail to Suffolk Construction providing TDW's new contact information in Orlando and stating "everybody at TDW knows about your project and its importance.  You and your customer are in even better hands...").   For these reasons, summary judgment is denied with respect to Defendant Greg Foushi.

In addition, issues of fact exist with respect to John Foushi's actions which also preclude the entry of summary judgment.  Furmanite contends that John Foushi told it when he resigned that he was going to retire.   However, John Foushi had a meeting with Furmanite's Orlando employees in March of 2006 prior to his resignation in which attendees state that  John Foushi told them he was not going to retire, that TDW was opening a service center in Orlando in which he was going to work, and that TDW was offering opportunities for them which "looked good."   (*E.g.,* Doc. No. 101-7, p. 3).   Accepting all reasonable inferences from these facts, an issue of fact exists as to whether John Foushi solicited Furmanite's employees on behalf of TDW while he was still employed by Furmanite.  For these reasons, summary judgment as to John Foushi on this claim must be denied.

**Conclusion**

Based on the foregoing, the Motion for Summary Judgment (with Incorporated Memorandum of Law), filed by Defendants T.D. Williamson, Inc., TDW Services, Inc., and Bryan McDonald on December 29, 2006, (Doc. No. 101), and the Former Employees' Motion for Summary Judgment (with Incorporated Memorandum of Law), filed by Defendants Greg Foushi, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, Nicole Turner, and John Foushi on December 29, 2006, (Doc. No. 102), are **GRANTED in part and DENIED in part**, as follows:

1. Summary judgment is **DENIED** as to Count I of the Amended Complaint (Tortious Interference);

2. Summary judgment is **GRANTED** as to Count II of the Amended Complaint (Trade Slander);

3. Summary judgment is **DENIED** as to Count III of the Amended Complaint (Misappropriation of Trade Secrets);

4. Summary judgment is **GRANTED** in favor of Defendants T.D. Williamson, Inc., and TDW Services, Inc. as to Count IV of the Amended Complaint (Breach of Confidentiality Agreements). In all other respects, summary judgment is **DENIED** with respect to Count IV;

5. Summary judgment is **GRANTED** as to all Defendants as to Furmanite's Conversion claim for the value of its Orlando office. In all other respects, summary judgment is **DENIED** as to Count V of the Amended Complaint

(Conversion);

6.      Summary judgment is **DENIED** as to Count VI of the Amended Complaint (FDUTPA);

7.      Summary judgment is **GRANTED** as to Count VII of the Amended Complaint (Economic Boycott);

8.      Summary judgment is **DENIED** as to Count VIII of the Amended Complaint (Civil Conspiracy);

9.      Summary judgment is **DENIED** as to Count IX of the Amended Complaint (Breach of Duty of Loyalty).

**DONE and ORDERED** in Chambers in Orlando, Florida this 11th day of April, 2007.

Copies furnished to:

Counsel of Record